You may be seated. The clerk will call the next case. Case number 313-0044, Professional Business Automation Technology, found by Peter Howell v. Old Plank Trail Community Bank, N.A. by David Hurst. Mr. Howell, you may proceed. Good afternoon. Initially, there are two procedural points that I'd like to underscore regarding the bank's brief in this matter. The first is the bank's attempt to confuse Kevin Rieger personally with PBA, Professional Business Automation Technology, LLC. And throughout this argument, I'll use PBA as an abbreviation. Mr. Rieger personally is not the plaintiff in this action. It's PBA, LLC. Yet, the bank repeatedly refers to Mr. Rieger as the plaintiff in its brief because that's how the bank has attempted to say that Mr. Rieger personally is somehow attempting a double recovery. And that stems from the fact that Mr. Rieger and Mick Pavnika settled a dispute over their ownership interests in PBA, LLC. In point of fact, Mr. Rieger is just not the plaintiff here, and the bank's attempt to create confusion as to the parties should be rejected. Secondly, and importantly, the bank has clearly violated Supreme Court Rule 341b6, which requires citations to the record. The bank did not limit its citations to the record. Rather, the bank cited almost exclusively to a so-called appendix that it attached to its brief, which is made up of portions of deposition transcripts that are not in the record. It's not proper to allow the bank to rely on factual assertions that are not contained in the record and were not available to the trial court. And those portions of the brief relying on the bank's appendix should be stripped. Now, briefly, very briefly as to the facts, it is PBA, LLC's position in this case that Mick Pavnika and his wife went to the bank, opened an account in the name of PBA, Inc., and then took checks belonging to PBA, LLC, and deposited them into the PBA, Inc. account, and then took the money for themselves. And the PBA, LLC brought a claim against the bank for conversion under the UCC. Now, as to the substantive questions in the appeal, in granting summary judgment, Judge Rossi relied upon the Fiduciary Obligations Act and stated, quote, I just find that the bank had to do something more, close quote. And, quote, in order to cross the line, it needs some active wrongdoing, close quote. However, that is not the standard under the Fiduciary Obligations Act. A plaintiff can recover under the Fiduciary Obligations Act if he can prove either, one, actual knowledge by the bank of a misappropriation, and that's not what we're seeking here, or two, knowledge of sufficient facts that the bank's payment of the funds amounts to bad faith. And then the case law goes on to say, in determining whether the bank acted in bad faith, the courts consider whether it was commercially unjustifiable for the bank to disregard and refuse to learn readily available facts such that it was bad faith to remain passive. So Judge Rossi referred to it as the bank had to do something active, but that's not the case because it is enough for the bank to have remained passive. Here, the bank improperly remained passive in connection with opening the subject account based on the facts that it knew, or easily discoverable facts. The bank admitted in its motion for summary judgment that McPavnicka met with a personal banker, told that personal banker that he was in a partnership but that we had broken up that company, and that he was in the process of putting together a new company. But Mr. Pavnicka said to the banker that he had the paperwork, had not finished with the state filing, but that he was going to do that. The banker then printed a report from the Secretary of State website showing a registration for PBA LLC, my client, but did not print a registration for PBA Inc., which was the entity for whom the account was being opened. And the bank had stated in its brief, because PBA Inc. had not yet been incorporated. In addition, the bank states that it relied on an FEIN and a self-serving corporate resolution signed by the Pavnickas for PBA Inc. But the bank, at the time, the personal banker, didn't even notice that the corporate names in the FEIN and the corporate resolution were different. So you have that discrepancy, you have the printout, and you have Mr. Pavnicka's statements that he hadn't yet finished the paperwork. Now, in light of all that information, all the bank needed to do was ask for one more thing, one more bit of information. Give me some proof of the actual corporate existence of PBA Inc., a copy of its Articles of Incorporation. They get filed with the Secretary of State. Even a printout, the actual printout, you go onto the screen, the same screen you get for the LLC, get that for the corporation. But they didn't do that. They didn't ask for the actual one bit of information to show that PBA Inc. actually existed. And of course, they couldn't get that information because at the time, PBA Inc. did not exist. It had no corporate existence. And we contend then that it was bad faith for the bank to have disregarded the facts in its possession, including the discrepancies in the facts, and to have remained passive. We contend that they could have done something more. But at a minimum, it should be left to a finder of fact to determine whether the bank's conduct was bad faith. And thus, summary judgment should not have been granted. In addition, the trial judge also noted that he felt that Section 3-404 of the UCC would bar plaintiff's claims. That section is often referred to as the imposter defense or the fictitious AE rule. But the case law is clear that this defense can only be used where an individual misrepresents his own identity. It does not apply when an individual falsely represents his authority or status as an agent. And that's, among other places, from the Advocate Health v. Bank 1-348-755. The bank has never pointed to anything in the record or anything else to suggest that the Pavnikas went into the bank when they opened the account and misrepresented their own identities. Thus, the imposter defense or the fictitious AE rule is just not applicable here and it certainly cannot form a basis for summary judgment. And likewise, the bank relied, the trial judge didn't go further than those two specific points, although he mentioned he may have been able to, if you will. But the bank has also relied on Section 3420, 3-420 of the UCC. And again, our position is there are at least fact questions regarding the applicability of that section. First, there's the question of the payee of the checks. The bank has pointed out that none of the checks are made payable to PBA LLC. Well, none of the checks are made payable to PBA Inc. They don't say PBA Inc. They don't say Incorporated. They don't use any of that. They also admittedly don't say LLC. They just say professional business or PBA, professional business technology. Now, that's a fact question. Whose checks are they? We supplied information in the record to Judge Rossi that in the prior proceeding between Mr. Rieger and McPavnicka, Judge O'Leary had found, had made a finding to the effect that the checks had belonged to LLC. But in any event, there is a significant fact question as to who the payee is, and it certainly couldn't inform the basis for a summary judgment motion. And then, like, I'm sorry. I mean, the summary of the, or the basis for the summary judgment was then under the Fiduciary Obligations Act, right? And what the bank, what the affidavit says is that they came in with an FEIN and their corporate resolution, which is what they require. So they come in with this, and the checks aren't made out to either one. I mean, I guess, and my feeling is that Judge Rossi's saying you need more than just saying that this is, they should have or could have brought you more. They didn't. And this is what they normally accept. So what is the active wrongdoing? Well, if all that they had done was come in and said, here's the FEIN, and here is the corporate resolution, maybe that's enough. But they did more. They did more. They opened the door. They started down the path. They, the bank themselves, went on the website and found, hey, wait a second, here's the corporate information for PBA LLC. And they also submitted evidence that Mr. Pavnika said, well, I have the documents, but I haven't finished them yet. So if the, I don't think necessarily that it's good practice or good policy for a bank to just be able to put the blinders on and just rely on the two bits of information, the FEIN and the corporate resolution. But if that is the case, once they start down the path and open their eyes, then they have to do something more. Because the imposter defense says it's not just the facts, it's the facts they know and that are available to them. At the point that they open the door, they know facts. They know, hey, wait a second, I went on the LLC, or I went on the Secretary of State website, I didn't find ink, I found LLC. If we're going to allow a bank to just take that information and then stick it in a file, we've failed. If they start down the path, then they have to do something with it. And that's why I believe that Judge Rossi was wrong to say that they can remain passive. Yes, that they can remain passive and that they have to actually do something active. Indeed, Judge, I would suggest they did something active. They went and found some information. They listened to what Mr. Pavnika had to say when he was opening the account. So I think that there is a basis, at least, for a question of fact under the fictitious paying rule. And I agree to you that Judge Rossi didn't get into the other points. They are certainly covered in our brief. The question over 3-420 on the delivery of the checks, that isn't a basis to allow summary judgment because there was at least a question of fact as to when Mr. Pavnika got those checks. Was he still a member of the LLC and did he receive them in that capacity? And an agent is enough. And likewise, the last point on the double recovery, there is no basis to find summary judgment on the basis of the barring of plaintiff's claims on the double recovery doctrine under the Joint Tort Fees or Contribution Act because there's different plaintiffs in the two different cases. They're not just tort cases. The other liability in the prior case before Judge O'Leary also dealt with breach of fiduciary duty, violation of the Illinois Limited Liability Company Act, breach of contract. And so again, at a minimum, there's a fact question as to whether those two sets of damages arise out of the same injuries and would be barred by the Contribution Act. For all of those reasons, we would respectfully ask that the summary judgment entered by the trial court be reversed and that the case be remanded for further proceedings based on the existence of the fact questions. Are there any questions? Thank you. Mr. Hurst? Good afternoon. Good afternoon. I'm David Hurst. I'm here on behalf of Old Plank Trail Community Bank. This is a case in which a bank was unwittingly embroiled in a dispute between two former business partners fighting over their customers. Judge Rossi understood this, and he correctly entered summary judgment in favor of Old Plank Trail Bank because simply the bank didn't do anything wrong. To quote Judge Rossi, I find that the bank had to do something more. In order to cross the line, you need some active wrongdoing. Maybe not a lot, but you need something on the part of the bank. And the plaintiff in this case spent four years taking discovery only to find that there was no something more. There was no evidence that was uncovered by the plaintiff that was sufficient to create a genuine issue of material fact, and those were the trial court's findings. The trial court focused on three issues that warranted entry of summary judgment. They were Section 7 of the Fiduciary Obligations Act, Section 3-404 of the Uniform Commercial Code, and then Section 3-420 of the Uniform Commercial Code. Section 7 of the Fiduciary Obligations Act provides that a bank that deals with a fiduciary is not liable to the principal for the fiduciary's breach unless the bank acts in bad faith or has actual knowledge that the fiduciary is breaching his obligations to the principal. The purpose of the act, and this is citing the Mikrit case that we spent a fair amount of time on in our brief, which I think is, frankly, a very informative case. Mikrit, the Second District opinion, says that the purpose of the act is to relieve the depository bank of the duty of seeing that funds are properly applied. It becomes the principal's burden to employ on his fiduciaries. The Mikrit court further stated that establishing bad faith requires evidence that the bank suspected that the fiduciary was acting improperly and deliberately refrained from investigating. Simply being on notice of the existence of a fiduciary relationship isn't enough. Now, in the instant case, Kevin Rieger was the member manager of the plant. He was asked in his deposition, do you have any evidence that Old Plank Trail Bank knew that there was a dispute between Professional Business Automation Technology, that's his company, and the Pavnikas at the time they opened the account? Mr. Rieger answered, no. So the undisputed evidence in this case shows that the bank complied with all of the requirements that are imposed on it. The bank requested and was provided with PBA Technology Inc.'s corporate resolution signed by the Pavnikas. Anne O'Neill was the bank representative. She came and testified that these are the corporate documents that are customarily required of a corporate customer that opens an account. Namely, the resolution, which provides three things. It provides an affirmation that the Pavnikas had authority to and were acting on behalf of PBA Technology Inc. It provides an affirmation that Methodius Pavnika was an officer of PBA Technology. And it provides an authorization for Old Plank Trail Community Bank to honor all of the checks and drafts and orders in the name of PBA Technology Inc. The bank was also provided with a notice from the Department of Treasury, with an FEIN number. They were provided a driver's license from the Pavnikas. They put the system through their checks system and their OFAC inquiries. Their identities were run through the US Patriot Act database. The Pavnikas then signed signature cards attesting to the accuracy of the information that they had given the bank. These are all the things that the bank customarily does when they open a corporate account, and there is no evidence in this case that they deviated in any way from the requirements that are before them to open a corporate account. Collectively, these documents clearly show that PBA Technology Inc. was acting as an association using corporate powers with apparent compliance with Illinois law. So based on the documentation and the compliance with banking procedures, there's simply no evidence that the defendant bank had some legal duty to further investigate the corporate status of the defendant, and none is cited by the plaintiff in this case. Rather, the plaintiff is seized on the fact that a one-page printout from the Illinois Secretary of State Business Division appeared in the records that he subpoenaed from the bank, and that document is a printout for Professional Business Automation Technology, LLC. And based on the appearance of this piece of paper, the plaintiff has prepared this complaint, and it's highly speculative, and it suggests that the bank engaged in malfeasance and it's simply, again, there is no evidence that the bank relied on the existence of Professional Business Automation Technology to open the account for PBA Inc. In fact, the evidence is just the opposite. They got a corporate resolution, a driver's license, they interviewed the president of this corporation, came into the office, and was interviewed by the staff there. So, in fact, Anne O'Neill testified to that in her deposition, that the bank did not rely on the Secretary of State's printout. That is so much of the focus of the plaintiff's case. In fact, she even said, you know, business owners who come into our bank frequently have multiple accounts. It's not uncommon to have, according to Ms. O'Neill, a customer that will have two or three corporations with similar names, and each one can open a separate account. Now, I would point out in this case that the bank had no banking relationship with Mr. Rieger or with Professional Business Automation Technology, LLC, or the Pavnikas. None of these individuals were known to the bank. And that's a significant fact, because I think in a number of the cases that we cite, where banks were charged with some knowledge, the banks had prior relationships or extensive lending relationships with the customers, and that wasn't the case here. Ms. O'Neill further testified that for a newly formed corporation, it might not appear on the Secretary of State's website, based on her experience. It might take a couple of weeks for it to show up again. So the fact that you look on the Secretary of State's website and a newly formed corporation or someone who says they're in the process of setting it up, that it doesn't appear, again, it's not that big of a deal. And it certainly wasn't a red flag that would put the bank on notice that, my goodness, we need to do further investigation. It just simply isn't the case. Well, the plaintiff next asserts that if the bank didn't do anything affirmatively wrong, it must have done something that was commercially unreasonable. In the Migrate case, again, cited in our brief, the Second District states, you know, that mere suspicious circumstances are not enough to require a bank to inquire further. In this case, there are suspicious circumstances. There are circumstances that accrue or occur in many of the corporate accounts that this bank opens. The Migrate court said that there are many legitimate reasons why an agent in principle might engage in odd checking practices. And again, you know, again, it's not a surprise. We also cite the Time Savers v. LaSalle Bank case, also a Second District court. In that opinion, the court stated that even though LaSalle Bank had conversations with and possessed documents that showed a fiduciary relationship between Time Savers and its shareholders and transfers of money to that depositor, there were no facts that triggered the duty of LaSalle Bank to inquire further. In this case, there's no indication that the bank was even aware of the fiduciary relationship, let alone that someone might be breaching that relationship. There's just nothing to put the bank on notice. Again, this goes to the something more that Judge Rossi was referring to. There's got to be something that triggers the duty on the bank to investigate further, and there just aren't facts of that in this case. The plaintiff also then seems to rest his claim on the assertion that PBA technology had not been incorporated through the Secretary of State at the moment the account was opened. But in doing this, the plaintiff ignores the fact that a business need not be incorporated under the laws of the state to open a business checking account in person. The Pavnikas could just as easily have opened the same business account in the name PBA technology as sole proprietorship. Or they could have come in, and Illinois law recognizes a de facto corporation. They could have presented it that way. So there is no requirement that the term Inc. or LLC appear or that the bank be presented with a particular document other than the corporate resolution, which that's the exercise of corporate authority right there. But there is no requirement that when the person comes in and opens the account in person that the term Inc. or LLC appear in the company's name before the company can open a business checking account. It was sufficient that the Pavnikas tendered the identification, their driver's license, and the corporate resolution. In this case, the bank obtained more, but that would have been sufficient. We've also made reference to Section 3-404 of the Uniform Commercial Code. This is known as the fictitious payee rule. Sometimes it's referred to as the imposter defense. It may be referred to both ways in our briefs, but it's the same thing. This affords a defense to a bank where an account is created with the intent to impersonate a legitimate payee. The rule provides that a bank is not liable to the payee where an endorsement is made in the name of the payee or it's made in a name substantially similar to the names of the payee or it's deposited into a depository bank to an account in a name substantially similar to the payee to the extent the bank does so in good faith. So it really isn't of consequence that the checks come payable to PBA technology in varying forms. Unless something happens that puts the bank on notice that, you know, hey, you can't take these particular checks that are payable to this entity or that entity, and there is no evidence of that, then Section 3-404 says, look, that you receive checks or you may negotiate those checks and the names are substantially similar. Then, you know, absent something more, you're insulated. Again, Judge Rossi got it right. Old Plank Trail Bank took the checks and the instruments in the usual and customary manner. It obtained the resolution that it was required. The bank was aware that the Pabnicos were members of this other LLC and officers of PBA Technology, and there's nothing unusual, again, about a small business owner having an interest in two or more entities with similar names. There's no evidence that was offered that puts the bank on notice that there was even a dispute between Pabnicum and Rieger. In fact, that lawsuit was filed a couple of months after the account was opened. So even if they checked, I don't know, the court records, they wouldn't have found a dispute. So applying Section 3-404, Old Plank Trail Bank's met its burden. It's presented evidence that shows it took the instruments in the usual and customary manner, that it acted in good faith. The onus is on the plaintiff at this point to support its allegations of wrongdoing with evidence that raised a general issue of material fact, and they didn't do that. Judge Rossi entered a summary judgment both in the Fiduciary Obligations Act section and under Section 404, and perhaps under Section 420 as well, although he said, I don't know that I have to go that far. But regardless, I'll touch on it briefly. Section 3-420 of the Uniform Commercial Code sets forth the elements that are applicable to conversion of a negotiable instrument. And in sum, Section 3-420 provides that a claim for conversion may only be brought by the payee. In this case, professional business automation technology is not the payee. They're not listed as the payee on any of the checks. In fact, the checks were primarily payable to PBA Technology or PBA Technology in varying forms at its company address in Mokina for those checks that were addressed. But none of the checks or addresses were addressed to the LLC, Professional Business Automation LLC, which according to the Secretary of State's records, had its location in Tenley Park. For purposes of stating a conversion claim against the bank, the plaintiff's failure to satisfy an element of a claim is really the end of the inquiry. The bank's not liable for conversion of an instrument if it's not payable to the party claiming conversion. I think while it may be important to the plaintiff whether the customers belong to him or they belong to Mr. Pavnika, again, that's not the inquiry under Section 3-420. The issue is who are the checks payable to. But even if the plaintiff was the payee on these instruments, the claim still fails because the plaintiff didn't establish that it ever received delivery of the instruments. Section 3-420 has a delivery requirement. An action for conversion of an instrument may not be brought by a payee who did not receive delivery of the instrument either directly or through an agent or co-payee. Thank you. Well, the plaintiff then attempts to say, ah-ha, I can get around this. The delivery requirement's satisfied because the Pavnikas were acting as my agent. Well, that doesn't get you very far because there's no way that the plaintiff can show the elements necessary that the Pavnikas were acting as agents of PBA Technology LLC at the time they were negotiating these checks. First, Mr. Pavnika testified that he had resigned his position on October 6th, which is before he opened the account with the defendant bank. The other corporation, the LLC, wasn't listed on the account, so Mr. Pavnika took clear steps to separate this account from the prior account. Certainly, this is an indication that he's acting as an agent. If I have time, I'll comment on two other things. I think there was a remark that all the bank needed to do was ask for proof of a corporate existence. Frankly, it's really a red herring. Again, the account could have been established as a de facto corporation. It could have been established as a sole proprietorship. Asking for another document doesn't really get the plaintiff anywhere. And then finally, Judge O'Leary's findings, those were done as part of a TRO in another case where the standard is reasonable likelihood of success on the merits. So even if she made factual findings under that standard, there are in no way collateral estoppel or binding on this court. Any questions? Can I ask a dumb question? Sure. How were the checks endorsed on the back? I'm not sure. I haven't looked at them in an awful long time. I wouldn't even want to speculate. I'd be curious to see if it was endorsed by an individual who marked it INC or LLC. Isn't there a dual agency here? I mean, there are some. Perhaps he was acting as an agent of both corporations or appeared to have a parent agency under LLC because he possessed the check. The problem with that suggestion is that the elements for an agency are lacking. There's been no manifestation of an assent. I understand your argument. So while that argument was made by the plaintiff in briefs to the trial court and he may have made them in briefs to this court as well, that's hard to show. But if the endorsement by Pavlik or whatever his name is on the back was INC, then the bank did absolutely nothing wrong. I mean, the face of the check said one thing and perhaps the endorsement said another, but maybe it's a non-issue. Thank you. Any questions? Thank you, Mr. Hearst. Mr. Howell? Justice Wright, you're exactly right. And not one of those is endorsed with INC. Not one. They didn't do it because they couldn't do it because INC didn't exist. Did they endorse with LLC? They did not. They simply endorsed them PBA technology or professional business technology. And sort of taking some of these points that counsel made, I do want to point out once again that counsel went through what he says the testimony was by Anne O'Neill, and that is all outside the record. It all comes from their appendix. It should not be relied on. It should not have been attached to their brief under the applicable case law. There is nothing there, and it wasn't available to the trial court. So there was nothing there as to their ordinary, this is what they ordinarily do and this is how they do it. None of that. The case law, the micro case, the time saver's case, those cases in both the cases where it exists, the facts in those were that the plaintiffs were saying the bank, based on some general knowledge of the customers, should have done something more in those circumstances. That's not what we're saying. We're saying here this bank did something. They went and they got that LLC information from the Secretary of State. And they got it in light of the fact that the testimony that is, the admissions that are in the record, is that Mr. Pavnika told them at the time, I used to have this business, but we're breaking that up and I'm going to be starting a new one. I haven't finished all the paperwork yet. But here, I haven't finished all this paperwork yet to create this entity, but why don't you go ahead and open it up in this name anyway? The facts are, whether they could have done it as a sole proprietorship, it's irrelevant. What they did was they set it up as a corporation. They set it up in a confusingly similar name. It provided the vehicle for Mr. Pavnika to accept the checks in his capacity as a member of the LLC, take them to the bank, deposit them into an account set up in a confusingly similar name, and take money. Tell me, is the bank, in your theory, at fault for opening the account or for depositing the checks in that account? It is part and parcel. They go hand in hand. I don't see it. Well, you couldn't have deposited the checks into the account if you hadn't opened the account in that name. So if the bank had opened the account in PBA or whatever the initials are, PBT, PBA, PBAT, whatever it is, without the ink, and then deposited checks into that account without the ink, there's no wrongdoing. That's a different question. Right, they opened an account with ink, and they deposited, allowed somebody who was not a corporate entity, an individual that is a corporation, allowed them to put a check in without the ink designation on it. And so I don't understand. Where do you think the breach of duty occurred? Your Honor, just opening it in the name of professional business automation technology would have been inappropriate in light of the information that they were provided at the time, and that is that the bank went and found this information on the website, found this other entity. Then they have the testimony or the statements from Mr. Padmika, I haven't actually set this business up yet, but I'm going to do so. That should be the red flag. That's the information you can't allow a bank to ignore. So whether he's going to set it up as a sole proprietorship or something else, that's the information you can't let the bank ignore. That's what it says. Once they get some information, they can't turn the blind eye towards it, and that's what the case law says. But wouldn't that have only, I mean, doesn't your theory, I mean, the problem is they couldn't set up an LLC in that name, so if they looked it up and they said, well, yes, we're going to set up this business as P-B-A-T-L-L-C, and they looked it up and they say, no, you can't do that, and if they would have done that, then they would have had liability, or if any of these checks were made out to this LLC. But I don't, I mean, it's certainly not uncommon for there to be different entities of the same name, they have different legal significance and identities. Actually, that's not true, because under the, and we quoted it, cited it under the Business Corporation Act, you can't set up separate entities that don't have common ownership with confusingly similar names for exactly this purpose. So they could not have done that. Mr. Pevnick could not have come in and set up. That's why Inc. got rejected. PBA Inc. never could have been accepted as an entity in Illinois because it was a confusingly similar name, and the Business Corporation Act prevents that for exactly this purpose. And so our point is the same, and again, at a minimum, these are fact questions. Should the bank have done something more once it started down the path, once it got the information that there was this other LLC, once they heard Mr. Pevnick say, I haven't done the documents yet, I don't have this corporation, but just go ahead and let me set it up, here's a resolution of a corporation that doesn't exist. I mean, you can't let them, it's absurd to say, well, you can take all this information in, but just close your ears and don't listen to it. Rely on the two pieces of paper that you say you need, and then set up the account. That's not what is allowed. What the Fiduciary Obligations Act says is, once you get some of that information, you can't turn the blind eye towards it. Or at least there's a question of fact as to whether it's reasonable, commercially reasonable or commercially justifiable, in the context for turning that blind eye towards it. And that is our position. How much money is that state here? It's not millions of dollars, it's tens of thousands of dollars. Less than $100,000. $42,000. Thank you. If there's no other questions, thank you, Mr. Hallam. Thank you both for your arguments here today. This matter will be taken under advisement and a written decision will be issued to you right now. We'll take a short break for panel change.